DECISION
On October 31, 1994, the plaintiffs, Nathan B. Epstein, M.D., George and Mary Patton, and Joseph S. Sinclair, filed a five count amended complaint against the defendants, Thomas P. Dimeo and William P. Considine, for damages arising out of the sale of the assets of the South Farm Village Associates Limited Partnership. The five counts allege breach of the Partnership Agreement, breach of the Rhode Island Limited Partnership Act, breach of fiduciary duty, conversion, and unjust enrichment, respectively. The parties have executed a Stipulation of Undisputed Facts and have agreed to have this matter resolved by submitting memoranda to the Court.
The plaintiffs were limited partners, and the defendants were general partners of this Limited Partnership formed under the laws of the State of Rhode Island pursuant to an Agreement of Limited Partnership dated October 1, 1978 (the "Agreement"). The purpose of the Limited Partnership was to construct, maintain, manage, and operate a housing development, known as South Farm Village, in Wakefield, Rhode Island. South Farm Village was the sole asset of the Limited Partnership. The limited partners of the Limited Partnership were comprised of fifteen (15) limited partnership units.
In early 1991 the general partners, acting through Robert K. Gaudreau, President of Gaudreau Co., Inc., wrote to the limited partners outlining an offer made to purchase South Farm Village. By letter dated January 23, 1991, the general partners described the proposed terms of sale and distribution of proceeds. The letter stated, in part, that the sale could result in the Limited Partnership receiving a total of $1,225,000 before expenses, consisting of $625,000 in cash and a $600,000 fifteen-year unsecured note. It also stated that the limited partners would receive $300,000 in cash and the entire unsecured note. Furthermore, it stated that "separately" the general partners would be required to sell their management rights, assigned to them by the Agreement, for $250,000. Pursuant to the Agreement, the written consent of sixty-seven percent of the limited partnership units was required for approval of the sale. In response to this first letter, only six (6) units executed such written consent.
Thereafter, the general partners wrote to the limited partners on six different occasions over the span of two years with modified offer. The modified offer reduced the amount of the nonrecourse note by $150,000 and increased the cash by $150,000. In response to the last letter dated February 9, 1993, an additional five and one-half (5.5) units executed written consent, totalling 11.5 units. Subsequently, the closing for the sale of South Farm Village occurred in the first week of February, 1993.
The plaintiffs allege that because the executed consents were accumulated over the course of two years, the requisite consent was not met and the defendants, therefore, had no authority to complete the sale. The plaintiffs also allege that the defendants breached their fiduciary duty by failing to disclose to the limited partners that the management rights were bifurcated from the sale of South Farm Villiage; that the defendants would receive their proceeds entirely in cash; or that the proposed distribution of assets deviated from the Agreement. Furthermore, the plaintiffs allege that because the terms of distribution required the limited partners to receive the nonrecourse note in its entirety, their liability increased, thereby requiring the unanimous consent of the limited partners.
CONSENT
Consent may be found in various places, including the Partnership Agreement or an amendment to it. Mist Properties,Inc. v. Fitzsimmons Realty Co., 228 N.Y.S.2d 406, 409-410 (Sup. Ct. 1962); Wasserman v. Wasserman, 7 Mass. App. 167,386 N.E.2d 783, 785, 787-788 (1979). The existence of consent is normally a question of fact. Inland Real Estate Corp. v. Christopher,107 Ill. App.3d 183, 63 Ill. Dec. 9, 437 N.E.2d 658, 663 (1961).
Pursuant to the Agreement in question, sixty-seven percent (67%) of the limited partner units must consent to any sale of assets. The only restriction in this regard states that such consent must be delivered in writing within thirty days after receipt of notice of the purchase offer. (See Article X, Section 10.2 (g)) No language exists, however, either in the Agreement or in the Limited Partnership Act, G.L. 1956 (1992 Reenactment) § 7-13-1 et seq., which forbids accumulation of such consent through repeated solicitations. The Court finds, therefore, that consent was accomplished in accordance with the terms of the Agreement.
DISCLOSURE
Generally, the fiduciary duty among partners requires that each partner make full disclosure of all material facts within his or her knowledge in any way relating to the partnership affairs. 59A Am. Jur.2d § 425. Any fiduciary, and particularly the general partners of a Limited Partnership, bear the burden of proving such disclosure. See Konover DevelopmentCorp. v. Zeller, 228 Conn. 206, 229-30, 635 A.2d 798 (1994). Section 7-13-21 states in pertinent part: "Each limited partner has the right to: (2) Obtain from the general partners from time to time upon reasonable demand: (i) True and full information regarding the state of the business and financial condition of the limited partnership, (iii) Other information regarding the affairs of the limited partnership as is just and reasonable." (Emphasis added).
The extent of the duty to disclose depends upon the circumstances of the individual case. Bromberg and Ribstein,Partnership, § 6.06 at 6:64 (1994). "Even if a partner was subject to a duty of full disclosure and failed to disclose every fact in connection with a particular transaction, there is no liability unless the nondisclosed acts were such as might be expected to have induced action or forbearance by the other partners — that is, were material." Id.
A review of the letters sent to the limited partners clearly indicates that the limited partners were to receive the full amount of the nonrecourse note, and that neither the Limited Partnership nor the limited partners would share in the proceeds from the sale of the management rights. Furthermore, to the extent that any terms of the sale and distribution deviated from the Agreement, the letters reasonably apprised the limited partners of such deviation.
The Court finds that the lack of affirmative language sought by the plaintiffs was not such as might be expected to have induced action or forbearance by the limited partners and, therefore, was immaterial. Accordingly, the Court finds that upon review of the circumstances of this case, the defendants complied with their fiduciary duty to provide just and reasonable disclosure.
Nonrecourse Note
Article II, Section 2.5 (b) of the Agreement states in part:
 [I]n the event the General Partners shall determine that an immediate sale of part or all of the Partnership's assets would cause undue loss to the Partners, the liquidating General Partners may, in order to avoid such loss, either defer liquidation of, and withhold from distribution for a reasonable time, any assets of the Partnership except those necessary to satisfy the Partnership debts and obligations . . . or distribute the assets to the Partners in kind." (Emphasis added).
In addition, Article X, Section 10.2 (f) states in part: "If any assets of the Partnership are to be distributed in kind, such assets shall be distributed or the basis of the fair market value thereof, . . . ." The Agreement, therefore, recognizes that the general partners have, at their option, the authority to distribute the assets in kind or otherwise. Here, the defendants chose to distribute the assets in cash combined with a nonrecourse note.
Furthermore, this Court is not persuaded by the plaintiffs' argument that unanimous consent was required before the nonrecourse note could be distributed to the limited partners. Article XIII, Section 13.13 (a) of the Agreement states in part: "[A]ll limited partners must give their consent in writing to any amendment which would . . . (iv) otherwise increase the liability of the Limited Partners."
General partners are personally liable for partnership obligations arising from the acts of other partners, agents, and employees. On the other hand, limited partners place only their capital contributions at risk, those contributions being substituted for personal liability. 59A Am. Jur.2d § 1353. There are instances, however, where limited partners may become personally liable for the obligations of the partnership beyond their capital contributions. Such instances would exist where a limited partner participates in management, lends his or her name to the partnership, or acts as guarantor of a partnership obligation.
Against this background, the Court interprets the unanimity provision of Section 13.13 (a) as a safeguard against unwanted personal liability. The acceptance of the nonrecourse note in no way increased the limited partners' personal liability. Acceptance of the nonrecourse note, therefore, did not require the unanimous consent of the limited partners.
For the aforementioned reasons, the Court finds that the defendants have fulfilled their fiduciary duties obligated of them under the law and the Agreement. Accordingly, the plaintiffs' prayers for relief are denied.